1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2

3   Criminal Action No. 12-CR-00010-MSK

4   UNITED STATES OF AMERICA,

5        Plaintiff,

6   vs.

7   RICHARD W. JOHNSON,

8        Defendant.

_____
9

**REPORTER'S TRANSCRIPT**
10              (Hearing on Change of Plea)

_____
11

12        Proceedings before the HONORABLE MARCIA S. KRIEGER,

13  Judge, United States District Court for the District of

14  Colorado, commencing at 1:34 p.m., on the 15th day of June,

15  2012, in Courtroom A901, United States Courthouse, Denver,

16  Colorado.

17                        **APPEARANCES**

18        GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19  Suite 700, Denver, Colorado, 80202, appearing for the

20  plaintiff.

21        MILLER LEONARD, Attorney at Law, 14143 Denver West

22  Parkway, Suite 100, Golden, Colorado, 80401, appearing for the

23  defendant.

24   Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Paul Zuckerman, 901 19th Street,
25      Room A259, Denver, Colorado, 80294, (303) 629-9285

**PROCEEDINGS**

1

2     (In open court at 1:34 p.m.)

3          *THE COURT:*  Please be seated.

4          The Court is convened today in case No. 12-cr-10.

5     This is encaptioned the United States of America vs. Richard W.

6     Johnson.  The matter is set down for a change in plea.

7          Could I have entries of appearance, please.

8          *MR. TILL:*  Good afternoon, your Honor.  Your Honor,

9     I'm Guy Till.  I'm an assistant U.S. attorney, representing the

10    Government.  Also present at counsel table to assist today is

11    ATF Special Agent Jason Cole.

12         *THE COURT:*  Good afternoon and welcome.

13         *MR. LEONARD:*  Good afternoon, your Honor.  Miller

14    Leonard on behalf of Richard W. Johnson, who is present in

15    person and in custody.

16         *THE COURT:*  Good afternoon and welcome.

17         Are you ready to proceed?

18         *MR. LEONARD:*  Yes, your Honor, we are.

19         *MR. TILL:*  Yes, your Honor, we are.

20         *THE COURT:*  All right.  Mr. Leonard, would you and

21    your client please approach the lectern.

22         *MR. LEONARD:*  Thank you, your Honor.

23         This matter is before the Court for a change in the

24    defendant's plea, for re-arraignment pursuant to Rule 10, and

25    for consideration of and advisement with regard to the parties'

1    plea agreement in accordance with Rule 11.

2         This hearing is continued from a prior hearing in

3    which I identified the charges that have been brought against

4    Mr. Johnson, and there was a question as to the provisions of

5    the plea agreement.

6         I understand that the revised -- according to the

7    revised plea agreement, the defendant intends to change his

8    plea of not guilty to a plea of guilty to Count 32 and 35 of

9    the superseding indictment and that the Government intends to

10   dismiss all remaining counts in the superseding indictment and

11   all counts in the original indictment against him; is that

12   correct?

13        MR. TILL:  That's correct, your Honor.

14        THE COURT:  Thank you.  Would you re-arraign on Count

15   32 and Count 35 of the superseding indictment.

16        MR. TILL:  Yes, your Honor.

17        Sir, are you the same Richard W. Johnson who is

18   indicted in Count 32 of the superseding indictment returned on

19   or about February 6, 2012, in this case?

20        THE DEFENDANT:  Yes, sir, I am.

21        MR. TILL:  Sir, in Count 32, the grand jury charges

22   you with using and maintaining a drug-involved premises and

23   aiding and abetting another.

24        The allegation is that on or about February 5, 2007,

25   and on or about January 20, 2012 -- between those dates --

1    within the District of Colorado, a number of defendants -- and

2    you are on that list, sir; you are Defendant No. 6, named as

3    Richard W. Johnson -- knowingly maintained and used a place, to

4    wit: premises informally known as the Hell's Lovers Motor Cycle

5    Clubhouse, for the purpose using and distributing quantities of

6    a substance and mixture containing a detectable amount of

7    marijuana, a Schedule I controlled substance, and quantities of

8    a substance containing a detectable amount of cocaine, a

9    Schedule II controlled substance, and intentionally aided and

10   abetted another to maintain and use said premises for the

11   purposes of using and distributing Schedule I and Schedule

12   II controlled substances, all in violation of Title 21 United

13   States Code Section 856(a)(1) and (2) and (b) and Title 18

14   United States Code Section 2, maintaining drug-involved

15   premises and aiding and abetting another to do so.

16            Sir, do you understand the charge?

17            THE DEFENDANT:  Yes, sir, I do.

18            MR. TILL:  Sir, today how do you plead to this charge?

19   Do you plead not guilty, or do you plead guilty?

20            THE DEFENDANT:  Guilty.

21            MR. TILL:  Thank you, sir.

22            THE COURT:  As of this moment, Mr. Johnson, you're not

23   bound by your plea of guilty.  Indeed, you're not bound by this

24   plea until I accept it.  You can change your mind at any time

25   during this hearing before I accept your plea.

1          In order to accept your plea, I have to be sure that

2     you understand the charges brought against you.

3          MR. TILL:  Your Honor, I probably did it incorrectly

4     because I didn't re-arraign him on Count 35.

5          THE COURT:  Let's go to that count, too.

6          MR. TILL:  I apologize.

7          THE COURT:  No problem.

8          MR. TILL:  Sir, are you the same Richard W. Johnson

9     who is charged in Count 35 with possession of a firearm in

10    furtherance of drug-trafficking felony in this case?

11         THE DEFENDANT:  Yes, sir, I am.

12         MR. TILL:  Sir, the allegation in Count 35 by the

13    grand jury is that on or about January 20, 2012, within the

14    State and District of Colorado, the defendant, Richard W.

15    Johnson, knowingly possessed a firearm in furtherance of a

16    felony drug-trafficking crime which could be prosecuted in any

17    court of the United States, to wit: knowingly to use and

18    maintain a drug-involved premises in violation of Title 21

19    United States Code Section 856(a)(1) and (2) and (b)(1), all in

20    violation of Title 18 United States Code Section 924(c),

21    possessing a firearm in furtherance of drug-trafficking felony

22    offense.

23         Sir, do you understand the allegation in Count 35?

24         THE DEFENDANT:  Yes, sir, I do.

25         MR. TILL:  Sir, today, how do you plead to Count 35?

1    Do you plead not guilty or do you plead guilty?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  Thank you.

4           We'll go back to where we were.

5    BY THE COURT:

6    Q.  You're not bound by this plea of guilty either until I

7    accept it.  You can change your mind on it as well.

8           And in order to accept both of these pleas of guilty,

9    I have to be sure that you understand these charges, you

10   understand the choices that you have and the consequences that

11   flow from those choices.  I have to be sure that your decision

12   to plead guilty is voluntary and you haven't been pressured

13   into it.  And I ultimately have to find that there is a basis,

14   a factual basis, to support the pleas.

15          Throughout this hearing, I want you to let me know if

16   there is anything you don't understand or if you have any

17   questions.  If you want to talk with your counsel at any time,

18   let me know and we'll take a brief recess so that you can

19   confer privately.

20          I begin by asking you a number of questions.  The

21   questions are not intended to trap, embarrass, insult, or

22   offend you.  The questions are important because your answers

23   are important.  It's your answers that I evaluate in order to

24   determine whether I can accept your pleas or not.

25          Therefore, you must answer my questions truthfully and

1    completely.  Indeed, just like a witness, you take a solemn

2    oath promising to tell the truth.  And if you do not tell the

3    truth, your answers can be used against you if an action is

4    brought against you for false statement or perjury.  Do you

5    understand?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Would you please administer the oath.

8              THE COURTROOM DEPUTY:  Would you raise your right

9    hand, please.

10        (Defendant sworn.)

11                          **EXAMINATION**

12   BY THE COURT:

13   Q.  Mr. Johnson, how old are you?

14   A.  57.

15   Q.  What level of school did you complete?

16   A.  One year in college.

17   Q.  Any difficulty reading or writing?

18   A.  No, I don't.

19   Q.  Within the last 24 hours, have you taken any medication?

20   A.  No, I haven't.

21   Q.  Within the last 24 hours, have you used any drug or

22   alcohol?

23   A.  No, I haven't.

24   Q.  To the best of your knowledge, have you been diagnosed with

25   any form of mental illness or disability?

1    *A.*   No, I have not.

2    *Q.*   Is there anything about the way you feel today physically

3    or emotionally that prevents you from understanding what is

4    happening?

5    *A.*   No, I don't.

6    *Q.*   Have you read and do you understand the charges against you

7    in the superseding indictment and in the original indictment?

8    *A.*   Yes, I do.

9    *Q.*   Have you spoken about those with Mr. Leonard?

10    *A.*   Yes, I have.

11    *Q.*   Have you asked him all the questions you had?

12    *A.*   Yes, I have.

13    *Q.*   Has he answered all your questions?

14    *A.*   Yes, he has.

15    *Q.*   Are there any other questions you want to ask him?

16    *A.*   No, there is not.

17       *THE COURT:*  Thank you.

18       Mr. Leonard, could you identify the plea agreement for

19    the record, please.

20       *MR. LEONARD:*  I will, your Honor.  I identify what has

21    been marked as Court Exhibit No. 1.  It is captioned Rule 5K1.1

22    Plea Agreement.

23       *THE COURT:*  Thank you.

24       Mr. Leonard, would you please turn to Court Exhibit 1

25    there.

1        Have you read that?

2            MR. LEONARD:  I have, your Honor.

3            THE COURT:  I'm sorry.  I shouldn't have asked you to

4    do that.  I should have asked Mr. Johnson to do that.  I assume

5    you've read it.

6    BY THE COURT:

7    Q.  Mr. Johnson, have you read it?

8    A.  Yes, I was -- seen this the other day.

9    Q.  All right.  And have you read it since it's been changed?

10   A.  I read a little bit over there, yes, ma'am.

11   Q.  Okay.  So you've read it through the whole thing?

12   A.  Not the whole thing but parts of it.

13           MR. LEONARD:  Your Honor, if I can help clarify this.

14           THE COURT:  Okay.  Maybe I should have asked you.

15           MR. LEONARD:  We met on Thursday, yesterday, to be

16   June 14, for the record; and he was presented with what is

17   marked as Court Exhibit 1.  He had previously read the plea

18   agreement which we were here on Wednesday for.  The changes

19   that were made to the plea agreement, which is identified as

20   Court Exhibit 1, were shown to him, identified to him.  For all

21   other purposes, the plea agreement that was contemplated to be

22   entered on Wednesday of this week was the same as this plea

23   agreement.  We went over the plea agreement in detail, and then

24   he signed it, along with my signature.

25           THE COURT:  All right.

1    *BY THE COURT:*

2    *Q.*   Mr. Johnson, have you had an opportunity to assure yourself

3    that what you are looking at there as Exhibit 1 is exactly what

4    you saw before except that the change has been made with regard

5    to the number of the count that you're pleading guilty to?

6    *A.*   Yes, it is.

7    *Q.*   Okay.  So let's go back to your understanding of the

8    original plea agreement.  Did you read that whole thing

9    through?

10   *A.*   Yes, I did.

11   *Q.*   Did you discuss it with Mr. Leonard?

12   *A.*   Yes, I did.

13   *Q.*   Did you ask him all the questions you had about it?

14   *A.*   Yes, I did.

15   *Q.*   Did he answer all of your questions?

16   *A.*   Yes, he did.

17   *Q.*   Now, these documents, both the first plea agreement you

18   looked at and the one that's in front of you, has a lot of

19   legal language in it.  Do you understand what it says and what

20   it means?

21   *A.*   Yes, I do.

22   *Q.*   Does it reflect all of your agreement with the Government?

23   *A.*   Yes, it does.

24   *Q.*   Did you sign it?

25   *A.*   Yes, I did.

1    *Q.*  Will you look at the last page, please.

2          Is that your signature at the end of the document?

3    *A.*  Yes, it is.

4          *THE COURT:*  Thank you.

5          And Mr. Leonard, does Exhibit 1 also bear your

6    signature?

7          *MR. LEONARD:*  It does, your Honor.

8          *THE COURT:*  Did you review the plea agreement with

9    your client?

10         *MR. LEONARD:*  I did, your Honor.

11         *THE COURT:*  Answer all of his questions?

12         *MR. LEONARD:*  Yes, ma'am.

13         *THE COURT:*  And are you satisfied that he understands

14   the contents of Exhibit 1?

15         *MR. LEONARD:*  I am satisfied.

16         *THE COURT:*  Did you review the discovery in this case?

17         *MR. LEONARD:*  I've reviewed the discovery in this

18   case, your Honor.

19         *THE COURT:*  And does it comport with the facts that

20   are recited in Exhibit 1?

21         *MR. LEONARD:*  Yes, your Honor.

22         *THE COURT:*  Thank you.

23         Mr. Till, does Exhibit 1 also bear your signature?

24         *MR. TILL:*  It does, your Honor.

25         *THE COURT:*  Thank you.

1     *BY THE COURT:*

2     *Q.*  Mr. Johnson, I want to bring a couple of provisions to your

3     attention in this agreement.  If you'll turn to page 4, you'll

4     see a paragraph that begins Paragraph E.  This paragraph

5     pertains to your right to appeal and to bring a collateral

6     attack against any judgment that's entered in this case.  And

7     you note that you are giving up your right in both regards

8     except in very limited circumstances.  You will not be able to

9     appeal from the sentence that is imposed in this case unless

10    the sentence exceeds the maximum penalty under the statute of

11    conviction, or the sentence is a result of a departure or a

12    variance upwardly from the applicable Sentencing Guideline

13    range, or the adjusted offense level determined is greater than

14    21.

15          You won't be able to collaterally attack by petition

16    for writ of *habeas corpus* the judgment that's entered in this

17    case unless there is an explicitly retroactive change in the

18    guidelines or the sentencing statute that applies, or you are

19    denied constitutionally effective assistance counsel, or you're

20    the victim of prosecutorial misconduct.

21          Now, there is one out left in this paragraph, and that

22    is your waivers of your rights here are released if the

23    Government appeals from the sentence that is imposed.

24          Do you understand that you're giving up your rights

25    with regard to appeal and collateral attack?

1   *A.*   Yes, I do.

2   *Q.*   Thank you.

3          Now, this plea agreement also contains a statement of

4   the facts that the Government believes it could prove if this

5   matter were to go to trial.  And by entering into this plea

6   agreement, you're admitting that those facts are true.  I'll

7   treat them as true for purposes of considering your plea and

8   then again for purposes of sentencing.  So I'm going to ask

9   Mr. Till to recite the facts that you've agreed to.  Listen

10  closely to what he says, because when he finishes, I'm going to

11  ask you if those facts are true.  And you must tell me if you

12  have any disagreement with the facts as recited by Mr. Till.

13  Do you understand?

14  *A.*   Yes, I do.

15          *THE COURT:*  Mr. Till, would you recite facts upon

16  which the parties agree, please.

17          *MR. TILL:*  Yes, your Honor.

18          I believe the parties agree the evidence at trial

19  would establish the following as to Count 32 and Count 35.

20          (1) Between January, 2005, and January, 2012, as

21  witnessed in part by an ATF undercover special agent, a number

22  of confidential human sources of information working with law

23  enforcement, on Friday and Saturday nights of the average week,

24  the premises informally known as Hell's Lovers Motor Cycle Club

25  clubhouse, located in the Denver metropolitan area within the

District of Colorado would be the scene of gatherings where Hell's Lovers Motor Cycle Club members and visitors consumed marijuana and cocaine.  The Hell's Lovers Motor Cycle Club clubhouse was the scene of marijuana consumption by 30 to 40 persons on any given Friday or Saturday night.  Cocaine was also consumed and shared at the Hell's Lovers Motor Cycle Club house on a regular basis.

(2) The routine and repeated use of marijuana and cocaine at the Hell's Lovers Motor Cycle Club clubhouse was known to the defendant and other Hell's Lovers Motor Cycle Club members.  The defendant knew marijuana was shared and used routinely and regularly at the clubhouse.  The defendant used marijuana at the clubhouse.  During the conspiracy, the defendant was a fully patched and christened Hell's Lovers Motor Cycle Club member.  The defendant paid monthly dues to support the Hell's Lovers Motor Cycle Club and the Colorado chapter of Hell's Lovers Motor Cycle Club clubhouse.

(3) The Hell's Lovers Motor Cycle Club clubhouse was financially supported by dues paid by the defendant and other members of the Hell's Lovers Motor Cycle Club, including fully patched and christened members, probationary members, prospective members, and quote, "property of," unquote female associates.  Clubhouse expenses such as rent and utilities were paid by the Hell's Lovers Motor Cycle Club chapter treasurer using Hell's Lovers Motor Cycle Club dues.

1    (4) The parties stipulate and agree for the purpose of

2    this plea agreement to make calculations based on marijuana

3    dosage information from the, quote, "typical weight per unit

4    table," unquote, in the application notes for Section 2D1.1 of

5    the guidelines.  According to that, one marijuana cigarette

6    equals .5 grams.  Two marijuana cigarettes equal 1 gram.  2,000

7    marijuana cigarettes equal one kilogram of marijuana.

8    (5) The parties stipulate and agree that for the

9    purposes of this plea agreement that 30 or more persons would

10   use marijuana at the clubhouse on Thursday, Friday, and

11   Saturday nights for approximately 40 weeks of the year.

12   Approximately 3,000 marijuana cigarettes equivalent to

13   approximately 1.5 kilograms of marijuana would be used at the

14   clubhouse each year.  In the seven-year period between 2005 and

15   2012, there was a period of approximately six months when the

16   Colorado chapter of Hell's Lovers Motor Cycle Club did not have

17   a clubhouse location.  Approximately 9.5 kilograms of marijuana

18   was used at the clubhouse.  For the purposes of this plea

19   agreement, the estimated quantity of cocaine used and shared at

20   the clubhouse is not factored into the calculations.

21   (6) From time to time within the last five years

22   firearms, were present at the clubhouse.  On January 20, 2012,

23   a search warrant was executed at the clubhouse, resulted in the

24   recovery of three firearms.  One of the firearms located by

25   investigators on the clubhouse floor was a pistol which was

1    described to investigators by a fully patched, quote,

2    "christened," unquote, member of the Hell's Lovers Motor Cycle

3    Club as a "clubhouse," unquote, firearm.

4            (7) The defendant was arrested on a federal warrant

5    and searched on January 20, 2012.  The defendant had ammunition

6    on his person which matched the clubhouse firearm.  The

7    defendant was wearing a holster which did not have a pistol in

8    it when he was arrested.  The defendant was a, quote,

9    "enforcer", unquote, for the Hell's Lovers Motor Cycle Club

10   Colorado chapter.  On January 20, 2012, as such an enforcer,

11   the defendant's responsibilities included being prepared to

12   defend the Hell's Lovers Motor Cycle Club Colorado chapter

13   clubhouse by the use of the clubhouse firearm recovered by the

14   ATF on January 20, 2012.  The defendant admitted to

15   investigators he had ammunition for the clubhouse pistol and

16   was prepared to defend the clubhouse.

17           (8) The Colorado chapter of the Hell's Lovers Motor

18   Cycle Club at all times pertinent had more than 10 members.  As

19   a national organization, the Hell's Lovers Motor Cycle Club at

20   all times pertinent had more than 100 members.

21           That concludes our factual basis, your Honor.

22           *THE COURT:*  Thank you.

23   *BY THE COURT:*

24   *Q.*  Mr. Johnson, are these facts true?

25   *A.*  Yes, your Honor.

1    *Q.*  Then let's talk about penalty here.

2           For Count 32, the maximum penalty is 20 years of

3    imprisonment, a fine of $500,000.  Both a fine and a term of

4    imprisonment can be imposed.  The term of imprisonment can be

5    followed by a term of supervised release of up to three years.

6    There is a $100 special assessment fee that's mandated by

7    statute.

8           For Count 35, there is a minimum mandatory sentence of

9    five years of imprisonment consecutive to any other sentence of

10   imprisonment, and there is a maximum penalty of life

11   imprisonment.  A fine of up to $250,000 can be imposed.  Both a

12   term of imprisonment and a fine can be imposed.

13          The term of supervised release can be as long as five

14   years.  And again there is a $100 special assessment fee.

15   These are felony convictions.  As felony convictions, they can

16   impact your civil rights, including your right to vote, possess

17   firearms, hold public office, serve on a jury, or obtain any

18   number of licenses that are issued by governmental authorities.

19          Now, in the federal system, we measure prison terms in

20   months, not years.  There is no automatic reduction.  There is

21   no parole.  That means that every month you are sentenced to

22   serve, you'll serve.

23          There are a limited number of ways to reduce a

24   sentence.  One is through a motion brought by the Government

25   shortly after judgment is entered.  Another is through a

1   successful appeal.  But you've waived, according to the terms

2   of this agreement, most of your opportunities to appeal.  A

3   third is through a collateral attack.  But again, you've waived

4   your right with regard to that in most circumstances.  And a

5   fourth is in the discretion of the Bureau of Prisons.  They can

6   give you credit against your sentence for good time served; but

7   their discretion is limited to 54 days per year, and they make

8   that determination on an annual basis based upon your behavior

9   and compliance with their rules and regulations.

10          After completion of a term of imprisonment, there is a

11   term of supervised release.  And here it can be as long as five

12   years.

13          During the term of supervised release, you're required

14   to comply with a number of conditions that are imposed.  They

15   regulate your behavior, what you can and cannot do and what you

16   must and must not do.

17          Your behavior is supervised by a probation officer,

18   and the conditions that are enforced fall into two categories,

19   standard conditions and special conditions.  Standard

20   conditions apply to all terms of supervised release.  Special

21   conditions are unique to you and to your particular

22   circumstances.

23          As you might guess, there are lots of standard terms

24   and conditions on supervised release.  I'm only going to

25   mention a few of them.  But you should understand there are

1    many more.  You can't commit any new crimes, state, federal, or

2    local.  You can't use, sell, or possess any illegal substances.

3    And you can't use, sell, or possess any prohibited firearms or

4    destructive devices.

5              Now, remember, there are lots of other standard

6    conditions as well.

7              Then there are special conditions.  And special

8    conditions are those conditions that are unique to you and your

9    circumstances.  They often deal with issues that have led to

10   criminal behavior.  So if you've used drugs or you've misused

11   alcohol, you may be forced to participate in a rehabilitation

12   program, have periodic drug tests, take medications, and you

13   may be required to participate in these programs for as long as

14   the probation officer believes they are appropriate.  You may

15   be required to pay for them.

16             There are other kinds of special conditions that can

17   be imposed.  You may be prohibited from associating with other

18   people that you previously associated with because they, too,

19   are convicted of having violated felony provisions in state and

20   federal law, or you may be prohibited from particular

21   activities that you've previously engaged in.

22             Now, what's important about all these conditions is

23   you're expected to abide by them, all of them, all of the time.

24   It's not good enough to say, "I tried"; and it's not good

25   enough to say, "I abided by some of them but not all of them."

1    If you do not abide by all of them all of the time, the

2    Government can bring you back here to this courtroom or another

3    courtroom, ask to have your supervised release revoked and have

4    you sent back to prison for another term.

5         Now, the penalty that will be imposed here is not just

6    a function of the statute of conviction.  There are other

7    statutes that come into play.  The most general of these is 18

8    U.S.C. Section 3553, which governs sentences in all federal

9    circumstances.  It obligates me to impose a sentence that is

10   sufficient but not greater than necessary in order to serve

11   particular objectives.  So your sentence, like all sentences,

12   must promote respect for the law, provide just punishment,

13   adequately deter criminal conduct, protect the public from

14   further crimes by you, and provide you with needed educational

15   or vocational training, medical care, or other correctional

16   treatment in the most effective manner.

17        This same statute tells me what factors I can consider

18   in imposing sentence: the nature and circumstances of the

19   offense, your history and characteristics, the kinds of

20   sentences that are available, what the Federal Sentencing

21   Guidelines would require, the need to avoid unwarranted

22   sentence disparities among defendants with similar records

23   found guilty of similar conduct, and in the appropriate case

24   the need for restitution.

25        Now, I know from looking at the plea agreement that

1    your attorney and the Government's attorney have estimated the

2    sentencing range that they believe will apply under the Federal

3    Sentencing Guidelines.  These calculations begin on page 10 of

4    Exhibit 1, and there are several things you need to know about

5    these calculations.

6         First of all, they're not binding.  These calculations

7    that continue on through page 15 of the agreement are just an

8    estimate.  There is no guaranteed sentence here.

9         The second thing that you need to know is that when it

10   comes time for sentencing, we're not going to be working from

11   these calculations or this document.  We'll be working from

12   another document called the presentence investigation report.

13   It's prepared by the probation office of the Court.  And it,

14   too, contains a calculation as to how the Federal Sentencing

15   Guidelines apply.

16        You and your attorney will speak with the probation

17   officer before the sentencing hearing and before the report is

18   prepared.  And you'll also get an opportunity to review the

19   report once it is prepared in order to determine that --

20   whether it is accurate and complete.  If you have a problem

21   with the report, you can bring that to the attention of the

22   probation officer.  And if the probation officer doesn't

23   adequately address your concern, you can raise the issue at the

24   time of sentencing.

25        Now, the third thing that you should understand is

1    that the Sentencing Guideline calculation is only one factor

2    that I consider in determining your sentence.  It's an

3    important factor, but it's not the only factor.  It's a

4    starting point, but it's not necessarily the ending point.  And

5    that's because I'm required to impose a sentence that meets

6    those sentencing objectives I referred to a minute ago.

7         If the calculation under guidelines doesn't accomplish

8    those sentencing objectives, then I can impose a non-guideline

9    sentence.  Sometimes people call that a statutory sentence,

10   sometimes people call it a variant sentence; but it all means

11   the same thing:  It's a sentence outside the guideline range, a

12   non-guideline sentence.  And it can be higher than the

13   guideline range or lower than the guideline range, whatever is

14   necessary in order to accomplish those sentencing objectives.

15        Your sentencing hearing will take place a number of

16   weeks from now.  And as I said, during that intervening time,

17   you'll meet with the probation officer and a presentence report

18   will be prepared.

19        Please don't be confused by the title "probation

20   officer."  It's just the title of the person who is preparing

21   the report, but it has nothing to do with the sentence to be

22   imposed.

23        At the time of sentencing, your attorney and the

24   Government's attorney will make arguments as to what sentence

25   they think is appropriate.  They may focus on the contents of

1    the presentence report.  They may argue about whether it should

2    be a guideline or a non-guideline sentence.  They may ask for a

3    departure under the guideline range or a variant sentence

4    outside the guideline range.  They may argue about where in the

5    guideline range the sentence should be imposed.  You -- or they

6    may argue about other things.

7           You will have an opportunity to make a statement, but

8    no one else may make a statement on your behalf.  If there are

9    other people who want to make a statement for you, they should

10   do so in writing and send their letters to the probation

11   officer who prepares the presentence report, not to me, but to

12   the probation officer, so that they will be attached to that

13   presentence report.

14          Do you understand the objectives and factors I'll be

15   evaluating in determining your sentence?

16   A.  Yes, I do.

17   Q.  Do you understand the maximum sentence that can be imposed?

18   A.  Yes, I do.

19   Q.  Do you understand that the charge you're pleading guilty to

20   is a felony charge?

21   A.  Yes, I do.

22   Q.  Do you understand that your conviction on these felony

23   charges may impact your civil rights?

24   A.  Yes, I do.

25   Q.  Do you understand that the sentence that is imposed may be

1    more severe than what's calculated in Exhibit 1?

2    A.   Yes, I do.

3    Q.   Do you understand that no matter what the sentence is, if I

4    accept your pleas of guilty today, you won't be able to

5    withdraw them at the time of sentencing?

6    A.   Yes, I do.

7    Q.   Any questions about sentencing?

8    A.   No.

9              THE COURT:   Thank you.

10             Mr. Leonard, could you identify Court Exhibit 2,

11   please.

12             MR. LEONARD:   Yes.   Thank you, your Honor.

13             Your Honor, I have Court Exhibit No. 2 before the

14   defendant, Mr. Johnson.   It is captioned, "Statement by

15   Defendant in Advance of Guilty Plea."

16             THE COURT:   Thank you.

17   BY THE COURT:

18   Q.   Would you turn to that Court Exhibit 2, Mr. Johnson.

19             Have you read that document?

20   A.   Yes, I have.

21   Q.   Have you discussed it with your attorney?

22   A.   Yes, I have.

23   Q.   Asked him all the questions you had about it?

24   A.   Yes, I have.

25   Q.   Has he answered all your questions?

1    A.   Yes, he has.

2    Q.   Are there any other questions you want to ask him?

3    A.   No, there is not.

4    Q.   Did you sign that document?

5    A.   Yes, I did.

6    Q.   Would you look at the last page, please, sir, and verify

7    whether that's your signature at the end.

8    A.   That's my signature.

9    Q.   Thank you.  Let's go over, then, the constitutional rights

10   that you're giving up today by making your plea of guilty.

11          Under the United States Constitution you have a number

12   of rights and protections that you are relinquishing or waiving

13   today by making your plea of guilty.  First and foremost, the

14   Constitution guarantees to you that you can have these kinds

15   charges tried to a jury in a jury trial to determine whether

16   you are guilty of the counts that are brought against you.  But

17   you're giving up your right to a jury trial by making your plea

18   of guilty today.

19          Now, if you elect to go to a jury trial, a jury of 12

20   would be selected.  You and the Government would have an

21   opportunity to participate in selecting the people who would

22   serve on the jury, and each of you could exclude any juror you

23   believed who could not be fair and impartial or was unwilling

24   or unable to follow the law.

25          All the jurors would take a solemn oath promising to

1    follow the law as they are instructed and to consider only the

2    evidence presented here in the courtroom.

3            One of the instructions that I would give them would

4    tell them that in order to convict you, they'd have to reach a

5    unanimous decision, an agreement that the Government had proven

6    every element of a charge against you beyond a reasonable

7    doubt, and if any one of them had a reasonable doubt as to the

8    proof, you could not be convicted.

9            Now, during the trial you have a number of other

10   rights, like the right to remain silent.  The right to remain

11   silent has several aspects.  You can remain silent, which means

12   that no one can force you to answer any questions or to

13   testify.  That also means that the jury can't consider your

14   silence in determining whether the Government has proven the

15   charge or charges against you.  But that still allows your

16   attorney to challenge all of the evidence presented by the

17   Government, cross-examine its witnesses, and make arguments to

18   the jury or to me.

19           And finally, you can waive your right to remain

20   silent.  You can testify if you want to.  You can call

21   witnesses to testify on your behalf or put on other evidence.

22   In fact, if there are people you'd like to have testify on your

23   behalf and they're reluctant to come forward, I would compel

24   them to do so.

25           You have yet another constitutional right in the trial

1   process, and that's the right to be represented by an attorney

2   and, where you can't afford one, to have one appointed to

3   represent you without any cost to you.

4         Now, Mr. Leonard has represented you thus far in this

5   case.  He has counselled you with regard to this agreement.

6   But I assure you that if you would prefer to go to trial, he

7   would represent you ably and well at trial.

8         And if you went to trial and you were convicted, you

9   could appeal both from your conviction and from your sentence.

10  But today, by entering a plea of guilty, you cannot appeal from

11  your conviction and, by the terms of your plea agreement for

12  the most part, you can't appeal from the sentence that's

13  imposed.

14        Do you understand that you will waive your right to a

15  jury trial and other constitutional rights associated with it

16  if you proceed with your plea of guilty today?

17  A.  Yes, I do.

18  Q.  Is that what you want to do?

19  A.  Yes, I do.

20  Q.  Where are you currently being housed?

21  A.  FDC.

22  Q.  Have you been treated all right?

23  A.  Yes, I have.

24  Q.  Anybody there or anybody else pressure you to enter this

25  plea today?

1          And before you answer, let me define "anybody" for

2   you.  I want it to have the most broad definition it can.  That

3   includes family and friends and colleagues and cohorts and

4   enemies and strangers and the folks you'd like to hang out with

5   and the people you don't like.  It includes law enforcement

6   officers and people at the facility where you're being housed

7   and people who work at the courthouse, even the attorneys.  Has

8   anybody pressured you to enter this plea today?

9   *A.*  No.

10  *Q.*  Has anybody promised you something that isn't in the plea

11  agreement?

12  *A.*  No.

13  *Q.*  Have you had enough time to review and consider and discuss

14  your plea and plea agreement with Mr. Leonard?

15  *A.*  Yes, I have.

16  *Q.*  Are you satisfied with him as your attorney?

17  *A.*  Yes, I am.

18  *Q.*  Do you have any concerns, complaints, or criticism about

19  the legal representation you've received?

20  *A.*  No, I don't.

21  *Q.*  Do you want to ask him any questions?

22  *A.*  No.

23  *Q.*  Any questions for me?

24  *A.*  No.

25  *Q.*  Well, then now is the time to finalize your decision.  This

1    plea and plea agreement, the one you and I have been

2    discussing, Exhibit 1:  Do you still want to proceed with it?

3    A.  Yes, I do.

4    Q.  You still want to enter a plea as provided in the plea

5    agreement to the charges in the second superseding indictment

6    found at Count 32 and Count 35?

7    A.  Yes, I do.

8    Q.  Do you want to take a minute?

9         Is that what you want to do?

10   A.  No, I want to finish it.

11   Q.  You want to finish it?  What does that mean?

12   A.  I just want to --

13   Q.  I'm sorry?

14   A.  Just I just want to go on with what we're doing.

15   Q.  All right.  Let me confirm then you want to proceed with

16   this plea agreement.

17   A.  Yes.

18        THE COURT:  Mr. Till, this plea agreement is premised

19   upon an agreement with the Government that it will dismiss

20   other charges.  Would you make that motion, please.

21        MR. TILL:  Yes, your Honor.  Because he's pleading

22   guilty to Count 32 and Count 35 of the superseding indictment,

23   I'd like to dismiss the remaining charges against him in the

24   superseding indictment, your Honor.  Also I'd like to dismiss

25   all the charges against him in the original indictment.  He's

1   not actually named in the second superseding indictment.  We

2   only named the people who were still apparently going to trial

3   on the second superseding indictment, so that one doesn't

4   concern him.

5            THE COURT:  So when we're talking about the first

6   superseding indictment, we're talking about Docket No. 180.

7            MR. TILL:  Yes, your Honor.  It's 180.

8            THE COURT:  Okay.  Do the charges at Counts 32 and 35

9   in Docket No. 180 adequately reflect the offense behavior?

10           MR. TILL:  They do, your Honor.

11           THE COURT:  And if I were to accept this plea

12   agreement and this plea, would the statutory purposes of

13   sentencing be undermined in any fashion?

14           MR. TILL:  No, they would not, your Honor.

15           THE COURT:  Thank you.

16           I assume there is no objection.

17           MR. LEONARD:  There is no objection, your Honor.

18           THE COURT:  Thank you.

19           Then based upon -- Let me ask you, Counsel:  Do you

20   want to supplement the record at all?

21           MR. LEONARD:  No, your Honor.  Thank you.

22           MR. TILL:  Your Honor, the only thing I would like to

23   say that, as indicated, we do expect to file a 5K1.1 motion

24   just as indicated in the papers, so we're going to ask the

25   Court at the time of sentencing, we believe, to reduce the

1   sentence pursuant to 5K1.1 and also the statutory provision of

2   3553(e).

3          THE COURT:  Thank you.

4          MR. TILL:  Thank you, your Honor.

5          Then based on the record made in open court this

6   afternoon in Case No. 12-cr-10, which is encaptioned for

7   purposes this of proceeding as the United States of America vs.

8   Richard W. Johnson, I hereby find that the defendant is fully

9   competent to enter an informed plea, he has been represented

10  through the course of this case and this proceeding, and he has

11  no objection, criticism, or complaint as to the representation

12  he's received.  He's aware of the nature of the charges against

13  him and the effects and consequences of his plea of guilty.  He

14  has knowingly and voluntarily waived fundamental constitutional

15  rights, including the right to jury trial.  He understands that

16  the penalty imposed by Court will be based in part on the facts

17  stated in this plea agreement, and the penalty may exceed the

18  calculations in this plea agreement.  His plea of guilty is

19  voluntary and knowingly made, and the charge and plea is

20  supported by an independent basis in fact.

21         The Government has orally moved to dismiss the

22  remaining counts in Docket No. 180 and the preceding

23  indictment, reserving only the two counts, 32 and 35, to which

24  Mr. Johnson has entered a plea of guilty.

25         I find good cause to exist, based on the

 1   representation of Counsel, that these charges adequately

 2   reflect the seriousness of the actual offense behavior and that

 3   the agreement does not undermine statutory purposes of

 4   sentencing.

 5        It's therefore ordered that Court Exhibits 1 and 2 are

 6   received, the plea as made in open court today is accepted, and

 7   the defendant is adjudged guilty as charged in Counts 32 and 35

 8   of the superseding indictment found at Docket No. 180.

 9        The motion to dismiss the remaining charges is

10   granted; however, the effect of this order is stayed until time

11   of sentencing.

12        The probation department will conduct a presentence

13   investigation and submit a presentence report as required by

14   Rule 32.  The defendant with the assistance of counsel will

15   participate in the investigation and cooperate fully with the

16   probation department.

17        It looks like you all have set a sentencing hearing --

18   No, it doesn't look like you've set a sentencing hearing.  Do

19   we have a date for one?

20        *THE COURTROOM DEPUTY:*  Your Honor, I believe it was

21   previously set at September 17 at 9:00 a.m.

22        *MR. LEONARD:*  I believe that's correct, your Honor.

23        *THE COURT:*  Mr. Till?

24        *MR. TILL:*  Your Honor, that's fine with the

25   Government.

1          *THE COURT:*  Okay.

2          Ms. Bush, would you please make sure that it gets into

3    CEO?

4          *THE COURTROOM DEPUTY:*  Yes, your Honor.

5          *THE COURT:*  Thank you.

6          Trial on the charges against Mr. Johnson was vacated

7    at the time of the filing of the notice of disposition.

8          With regard to other motions, it looks like we have

9    some that we need to address.  Just a motion to continue that

10   was filed on -- in February of 2012, Docket No. 203.

11         *MR. LEONARD:*  Your Honor, we ask that that motion be

12   dismissed or overruled as moot at this point.

13         *THE COURT:*  All right.  I'll just deny it as moot.

14         *MR. LEONARD:*  Thank you.

15         *THE COURT:*  Any other issues we need to address?

16         *MR. TILL:*  No, your Honor.

17         *MR. LEONARD:*  Your Honor, I have Court Exhibit 1 and 2

18   which I'd like to tender.  I don't know if you want me to give

19   them to your clerk.

20         *THE COURT:*  You can just give it to Ms. Bush at the

21   end of the hearing.

22         *MR. LEONARD:*  Thank you, your Honor.

23         *THE COURT:*  Thank you.  Then that will conclude this

24   hearing.  Thank you, Mr. Till; thank you, Mr. Leonard.

25         Mr. Johnson will be remanded to the care and custody

1    of the United States Marshal's Service.

2           Thank you to the Marshal's Service and to the court

3    staff.  That will conclude this hearing.  I wish you all a good

4    weekend.  We'll stand in recess.

5        (Recess at 2:17 p.m.)

6                         *   *   *   *   *

7                       **REPORTER'S CERTIFICATE**

8        I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled matter.  Dated

10   at Denver, Colorado, this 19th day of August, 2013.

11

12                                    *S/Paul A. Zuckerman*
                                      Paul A. Zuckerman

13

14

15

16

17

18

19

20

21

22

23

24

25